UNITED STATES of America, Appellee,

v.

Paul Anthony WARD, Appellant.

No. 93–3262.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1994.

Decided May 4, 1994.

Dean Grau, Minneapolis, MN, argued (Dean S. Grau and Scott Buhler, on the brief), for appellant.

Andrew Stephen Dunne, Minneapolis, MN, argued (Francis X. Hermann, Kenneth W. Saffold and Dale Caldwell, on the brief), for appellee.

Before McMILLIAN, WOLLMAN, and MAGILL, Circuit Judges.

WOLLMAN, Circuit Judge.

Paul Anthony Ward appeals from his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). He argues that the police unconstitutionally seized and searched him and that the district court [1] therefore erred in not suppressing the evidence discovered during the search. We find that Ward was neither unconstitutionally seized nor improperly searched and therefore affirm.

## I.

At approximately 6:00 p.m. on December 5, 1992, a clerk at a gas station in Hopkins, Minnesota, called the Hopkins Police Department. The clerk said that a customer had seen a man acting suspiciously in a brick alcove beside the station. Officer Klingbeil, who knew that the station had been robbed several times in the past, was the first officer to respond. He first inspected the alcove area, but saw no one. Klingbeil then examined the alley behind the station. When Reserve Officer Glassberg's patrol car appeared in the alley, Ward walked out of the darkness toward Klingbeil. Klingbeil turned on his flashlight to illuminate the area and asked Ward if he had any identification. Ward asked whether there was a problem, and Klingbeil told him that they had received a call about someone lurking outside the station. Ward provided Klingbeil with a paper indicating that one Paul Anthony Ward had just been released from Hennepin County Jail. Ward explained that the release paper was his only identification and that he was staying with his cousin, Daryl Hopkins, who lived in Hopkins. Ward asked Klingbeil if he could enter the station to purchase cigarettes. Klingbeil permitted him to do so and, joined by Glassberg, followed Ward into the station. Ward asked if he was under arrest, and Klingbeil said no.

By this point, Klingbeil had decided to detain Ward until he ran a warrant check.

He could not run the check immediately, however, because the lone dispatcher was busy. Klingbeil did not inform Ward that he was planning to detain him.

Inside the station, Ward appeared jumpy as he purchased his cigarettes. Klingbeil spoke to the clerk and to the customer who had initially reported seeing a man lurking in the alcove. The customer informed Klingbeil that Ward was the one he had seen earlier. After Ward had purchased his cigarettes, the two officers and Ward exited the station.

As they walked back toward the alley, Klingbeil asked Ward how he had gotten to the station. Ward, who continued to appear nervous, said that his cousin Daryl had given him a ride in a gray Bonneville, and then pointed toward Harrison Avenue. Glassberg, who had driven to the station via Harrison Avenue, said that he had not seen a Bonneville there. Klingbeil asked Ward where his cousin lived. Ward initially said that he did not know, but then stated that Hopkins lived by a truck stop. Klingbeil knew, however, that there was no truck stop in Hopkins. Officer Ophoven, who had arrived as Klingbeil questioned Ward, asked Ward if he would show them where his cousin lived. Ward agreed to do so. Ophoven asked Ward if he wanted to ride in Ophoven's squad car, and Ward said yes.

As the officers and Ward walked toward Ophoven's car, Klingbeil placed his left hand on Ward's shoulder and began frisking his right side. Ward asked Klingbeil what he was doing. Klingbeil responded that he had to frisk him before he could enter the squad car. Klingbeil felt some hard cylindrical objects in Ward's right coat pocket. Believing that the objects were shotgun shells, Klingbeil reached into the pocket and retrieved two shells. Ward protested that the search was illegal. Continuing his frisk, Klingbeil felt a long hard object on the left side of Ward's body. Klingbeil lifted Ward's jacket and discovered a sawed-off 20–gauge shotgun in Ward's left front pants' pocket. The officers removed the gun from Ward and ad-

---

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

vised him that he was under arrest for possessing the shotgun.

A federal grand jury indicted Ward for possession of a sawed-off shotgun and for being a felon in possession of a firearm. Ward moved to suppress the shotgun and the shells. Following a hearing, a United States Magistrate Judge[2] recommended that the evidence not be suppressed. The district court adopted the recommendation and denied the motion. Ward entered a conditional guilty plea to being a felon in possession of a firearm, preserving his right to appeal the denial of the suppression motion. The district court sentenced Ward to sixty-three months of imprisonment, to be followed by three years of supervised release.

## II.

We review the denial of a motion to suppress under the clearly erroneous standard of review. *See, e.g., United States v. Jorgensen*, 871 F.2d 725, 728 (8th Cir.1989). We will affirm unless the district court's decision is unsupported by substantial evidence or based on an erroneous interpretation of applicable law, or, in light of the entire record, we are left with a firm and definite conviction that a mistake has been made. *Id.*

Ward argues that he was seized within the meaning of the Fourth Amendment when Klingbeil initially questioned him in the alley and that Klingbeil did not have reasonable suspicion to justify the seizure. We disagree.

Whether a seizure occurred is a question of law that we review de novo. *United States v. McKines*, 933 F.2d 1412, 1426 (8th Cir.) (en banc), *cert. denied*, — U.S. ——, 112 S.Ct. 593, 116 L.Ed.2d 617 (1991). "Obviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons." *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968). A seizure does not

occur when a police officer approaches an individual and merely questions him or asks to examine his identification—so long as the officer does not convey a message that compliance with his requests is required. *Florida v. Bostick*, 501 U.S. 429, ——, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). If "a reasonable person would feel free 'to disregard the police and go about his business,'" the encounter is consensual and no reasonable suspicion is required. *Id.* (quoting *California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991)). In short, to determine whether a particular encounter constitutes a seizure, we consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that he was not free to decline the officers' requests or otherwise terminate the encounter. *Id.* at ——, 111 S.Ct. at 2389.

Applying this standard, we find that Ward was not seized until Klingbeil began frisking him. Prior to that time, none of the officers conveyed a message to Ward that he was not free to disregard them and go about his business. When Ward initially approached Klingbeil, the officer asked him for identification. When Ward asked if he could enter the station to purchase cigarettes, Klingbeil allowed him to do so, thus indicating to Ward that he was free to continue with his business.[3] As Ward walked into the station, he asked if he was under arrest, and Klingbeil said no, further indicating to Ward that he had not been detained. Although the officers followed Ward into the station, they in no way interfered with his business of purchasing cigarettes; rather, they continued their investigation by speaking with the clerk and the customer. After Ward exited the station, the officers continued to question him. But, as we have noted, mere questioning does not constitute a seizure, so long as the citizen feels free to disregard the questions. The record contains no evidence that the officers physically touched Ward, displayed a weapon, or used any language or tone of voice that

---

**2.** The Honorable J. Earl Cudd, Chief United States Magistrate Judge for the District of Minnesota.

**3.** That Klingbeil had decided at this point to detain Ward until he could run a warrant check is irrelevant in determining when Ward was seized because this information was not communicated to Ward.

would have indicated to Ward that he was compelled to answer their questions. *See Bostick,* 501 U.S. at ——, 111 S.Ct. at 2388; *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Nor did a seizure occur when Ophoven offered Ward a ride, for nothing in the record suggests that the officers conveyed a message to Ward that he had to accept the offer. In short, prior to frisking Ward, the officers did nothing more than ask him for identification and question him. Because the officers' conduct did not constitute a seizure, the officers needed no reasonable suspicion to justify their presence.

■■■ Klingbeil unquestionably seized Ward and subjected him to a search when he began frisking him. *Hodari D.,* 499 U.S. at 624–26, 111 S.Ct. at 1549–50; *Terry,* 392 U.S. at 19 & n. 16, 88 S.Ct. at 1878 & n. 16; *Sibron v. New York,* 392 U.S. 40, 63, 88 S.Ct. 1889, 1903, 20 L.Ed.2d 917 (1968). A police officer may search an individual's outer clothing to discover weapons when the officer reasonably believes that the individual may be armed and dangerous. *Terry,* 392 U.S. at 27, 30, 88 S.Ct. at 1883, 1884; *Sibron,* 392 U.S. at 63–64, 88 S.Ct. at 1903. In determining whether the officer acted reasonably in such circumstances, we give due weight "to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883.

Under the facts of this case, we cannot find that the district court clearly erred in finding that Klingbeil could have reasonably believed that Ward was armed and dangerous. Aware that the station had previously been robbed several times, Klingbeil knew that Ward, who had just been released from jail, had been standing in the dark alley behind the station for no apparent reason. Ward's untruthful answers to Klingbeil's questions provided further reason to be suspicious. *United States v. Abokhai,* 829 F.2d 666, 670 (8th Cir.1987), *cert. denied,* 485 U.S. 907, 108 S.Ct. 1082, 99 L.Ed.2d 241 (1988). When asked where his cousin Daryl lived, Ward initially said that he did not know and then said that Daryl lived near a non-existent truck stop. Likewise, the gray Bonneville

automobile in which Ward claimed to have been given a ride to the station was not where Ward indicated it would be. Ward's nervous appearance, although by itself not reasonable grounds for suspicion, *United States v. Miller,* 20 F.3d 926, 929–30 (8th Cir.1994), added another reason for Klingbeil to be suspicious. *See, e.g., United States v. Weaver,* 966 F.2d 391, 395–96 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 829, 121 L.Ed.2d 699 (1992). These facts and their reasonable inferences provided Klingbeil, who had been on the Hopkins police force for eleven years, with sufficient information to reasonably suspect that Ward had planned to rob the station. Because many (if not most) robbers are armed, Klingbeil could also have reasonably inferred that Ward was armed and dangerous. *Losee v. Dearinger,* 911 F.2d 48, 50 (8th Cir.1990). We therefore find that Klingbeil acted properly in frisking Ward before allowing him to enter the patrol car. *Cf. Abokhai,* 829 F.2d at 670–71 (finding that under the circumstances a patdown search prior to placing a suspect in a patrol car was a reasonable precaution).

The nature and scope of the search present no problems under *Terry* and its progeny. Klingbeil merely frisked Ward's outer clothing until he felt the cylindrical objects in Ward's pocket. Believing that the objects were shotgun shells, he was justified in reaching into the pocket to retrieve them. *Minnesota v. Dickerson,* —— U.S. ——, ——, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334 (1993) (contraband may be seized during a *Terry* search). Having found the shells and then having felt a long solid object on Ward's side, Klingbeil was also justified in lifting Ward's jacket to expose the shotgun.

The district court properly denied Ward's motion to suppress the shotgun and the shells. The conviction is affirmed.